In the Matter of Harry James STOCK-MAN and Betty Bill Stockman, Individually and doing business as co-partners under the following trade names and styles et al., Debtors.

No. 92327.

United States District Court
N. D. California.

May 9, 1967.

Quittner, Stutman, Treister & Glatt, Los Angeles, Cal., John Felton Turner, Oakland, Cal., for Harry James Stockman and Betty Bill Stockman.

Lawrence Goldberg, of Glicksberg, Kushner & Goldberg, San Francisco, Cal., for Lester E. Nathanson, Anita Nathanson and Irene Sweet.

Rothschild & Phelan, August B. Rothschild, San Francisco, Cal., for The Creditors Committee.

ORDER REVERSING ORDER OF BANKRUPTCY COURT DENYING CLAIM BY PETITIONERS LESTER E. NATHANSON, ANITA NATHANSON AND IRENE SWEET.

WOLLENBERG, District Judge.

This is a petition to review the order filed January 24, 1967, by the bankruptcy court denying a claim for administrative rent by petitioners in that court in the above entitled proceedings.

Petitioners are the owners of a piece of real property in Santa Rosa. In 1959, the petitioners leased this property to the debtors with the understanding that the debtors would build an apartment house on the land. The lease provided that debtors would pay $1,500 per year to owners as rent and would pay the taxes and all other charges to which the property might be subjected. Nowhere in the lease were these latter obligations referred to as "rent". It is apparent from the lease that both parties contemplated that the debtors would finance the apartment house through a lending institution and that owners would execute the necessary documents to subordinate their ownership to the interest of the contemplated mortgagee.

After the financing had been arranged and the construction of the apartment had been completed, the debtors were obligated to pay $1,431.51 each month on their note to the mortgagee. The principal of the note was $192,000. In addition about $8,000. was due each year for real property taxes. The debtors paid these charges until June 13, 1966.

On June 13, 1966, debtors began the above entitled proceedings by filing a petition for arrangement. By court order debtors were permitted to remain in possession. After June 13, debtors continued to run the apartment house and pay the normal operating expenses. The $1,500. due to the owners as rent for that year had been paid in full in January. However, the debtors made no further payments on the property taxes and ceased making payments on the note. The rentals from the apartments' tenants accumulated, and it is this pool of money that is the subject of the present dispute.

For reasons not related to this petition, the accumulated rentals allocable to the period after September 14, were paid to the lending institution, and the lease was terminated on November 21 by court order. Thus it is only the rents allocable to the period between June 13 and September 14 with which this Court is presently concerned.

Owners argue that the money should be used to pay the administrative expense of rent for the use and occupancy of the premises by the debtors in possession.

Debtors agree with this proposition, but disagree over the amount of rent which should be paid.

Both sides concede that the rental which must be paid under these circumstances is the amount which would represent the fair value for use and occupancy of the premises. They also both agree that the amount of rent specified in the lease is presumptively the fair value.

The bankruptcy court found first, that the lease provided for a rent of $1,500. per year and second, that $1,500. per year was the fair value for the use and occupancy of the premises and denied owners' claim for administrative rent beyond the $1,500. which had already been paid.

This Court finds that the first proposition is incorrect as a matter of law, and that the second, which is a finding of fact, is erroneous under the admitted circumstances of this case.

When owners subordinated their interest in the land to the mortgagee's interest their position was not significantly different from a person who owned a piece of property, mortgaged it, built an apartment, and then leased the premises for a rent sufficient to pay the taxes and mortgage payments. In either case, if there is a foreclosure by the tax collector or the mortgagee, the owner loses his interest in the property. It is equally important to the owner in either situation that both the taxes and the mortgage payments are paid. One would be making a technical distinction without a reasonable basis to hold that owners who let the lessee do the promotional work should be treated differently from the owner who does his own promoting, pays his own bills and designates as "rent" a higher sum of money. Any difference in the net income received by the two types of owners will simply be a reflection of the fact that some money must be invested to make up the difference between the total cost of the project and the amount for which it can be mortgaged. In one case it is the owner who receives the income on this investment, while in the other it is the lessee.

Thus in the present case, although the written lease between the owners and debtors did not specify as "rent" the payment of taxes and payments on the note, the amount of these payments must be considered along with the $1,500. per year paid to owners in determining what is presumptively the fair value for use and occupancy of these premises.

The finding by the bankruptcy court that the fair value for use and occupancy of these premises was $1,500. per year is clearly erroneous because that amount can only represent the fair value without the improvements. As we discussed above, owners have a very real interest in the rental from the improvements.

This ruling should not be interpeted to foreclose the right of debtors to dispute the presumptive value of the use and occupancy of these premises which is set forth above.

In addition, for the purposes of the bankruptcy court's final ruling on this matter, it should be noted that this Court finds no merit in owners' argument that they have a contractual right to the full amount of the taxes and note payments for that period. It is a matter of bankruptcy law that from the time a petition of this type is filed by the debtors, a landlord has no contractual right to rents unless and until the lease is adopted by the bankruptcy court. Wiemeyer v. Koch, 152 F.2d 230 (8th Cir. 1945).

Accordingly, it is ordered that the referee of the bankruptcy court is hereby reversed, and that the petitioners' claim be reconsidered by that court in light of this ruling.